# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH ALEXANDER,** *Plaintiff,* v. **DISTRICT OF COLUMBIA,** *Defendant.* | Civil Action No. 17-1885 (ABJ) |

## PLAINTIFFS' CONSENT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I. Introduction.

Plaintiff, Joseph Alexander, and the class members are persons who (i) were arrested solely for "incommoding" under D.C. Code § 22-1307; (ii) on or after September 18, 2014; and (iii) either were released without charges being filed or had any charges dismissed *nolle prosequi*.

Plaintiff Mr. Alexander filed this class action lawsuit on September 18, 2017, challenging what he contended was the systematic violation of his and the putative class members' constitutional rights by the District of Columbia's ("District") police department's ("MPD") arresting them for alleged violations of the District's "incommoding" statute (D.C. Code § 22-1307) without probable cause because of their race in violation of their Fourth Amendment and Fifth Amendment rights, respectively.

This settlement asks for damages and non-monetary relief. The Settlement Agreement provides that the District agrees not to oppose a motion, brought individually or by Class Counsel on a Class-wide basis, to expunge and treat as a legal nullity the arrests of Class Members covered by this Settlement Agreement [ECF No. 62-2], III(1).

The District will not oppose a motion for expungement by Plaintiff on behalf of himself and the class members declaring that their arrests were legal nullities and sealing the arrests.

This Motion asks the Court to finally approve the settlement this Court preliminarily approved in the Preliminary Approval Order [ECF No. 64]. There is no question that the Settlement is "fair, reasonable, and adequate" as required by existing case law and Fed. R. Civ. P. 23(e). *Rogers v. Lumina Solar, Inc.*, 2020 U.S. Dist. LEXIS 108259, at *10 (D.D.C. June 19, 2020); *Hardy v. District of Columbia*, 49 F. Supp. 3d 48, 49-50 (D.D.C. 2014); Fed. R. Civ. P. 23(e)(2).

This motion also includes a request for the Court to approve Class Counsel's attorney's fees and the incentive award for Mr. Joseph, the Class Representative. The District does not oppose the requests.

Notice was sent out last week. The Claims Administrator will send out a second round of notice to six class members for whom complete addresses were not available after addresses become available which the Parties hope will be in a few days. The Parties are also formulating a method to send Notice Packets to a small number of juveniles. The Parties do not expect this will require any changes in the deadlines.

The deadline for Class Members to submit any objections is June 14, 2023. *Id.* The claims period remains open until July 25, 2023, *Id.*, and Class Counsel and the Claims Administrator are still working to identify and provide notice to eligible claimants.

The Parties will advise the Court of the reaction of the class prior to the Final Fairness Hearing, currently scheduled for July 14, 2023, at 2:00 p.m. in the Amended Preliminary Approval Order [ECF No. 71], p. 2.

The Parties will submit a proposed Final Approval Order at that time.

**II. Terms of the Settlement and Final Allocation of Funds.**

The terms of the settlement are set forth in greater detail in the exhibits attached to the original Proposed Preliminary Approval Order, [ECF 245], and more specifically in the Settlement Agreement, [ECF 245-2], and the Amended Preliminary Approval Order. In summary, the proposed settlement's basic terms, as they relate to damages, are that Defendant will pay a total of $450,000. A total of $290,000 is allocated for distribution to the class. Each of the 152 class members who submits an approved claim will receive a *pro rata* share of this amount, subject to a maximum of $4,000. Each class member who submits an approved claim may elect to receive their payment via check or an electronic payment method such as Venmo or Paypal. The option to elect an electronic payment method will save check cashing fees for class members who are "unbanked."

The proposed allocation in the Settlement Agreement is:

- ➢ $5,000 for the Class Representative as an incentive award in addition to the compensation received from the Class Fund;
- ➢ $290,000 is allocated to the Class Fund. Each member of the class shall receive compensation from the Class Fund if a timely notice of claim is submitted to and approved by the Class Administrator. The amount of each share shall be determined on a *pro rata* basis from the Class Fund, subject to a maximum of $4,00;
- ➢ $130,000.00 for Attorney's Fees
- ➢ Claims Administration - The settlement agreement provided that $25,000 be paid to the claims administrator and that payment has already been made by the

District. JND now estimates the total cost will be $32,215.00 and agrees that any additional amount will be paid in accordance with the settlement agreement[1];

- The District shall receive reversion of any undistributed funds.

### III. The Standards for Final Approval of the Settlement Have Been Met.

In 2018 Congress adopted changes to Fed. R. Civ. P. 23(e) which basically codified prior case law. *See generally, 4 Newberg on Class Actions*, § 13:13 (Standard for granting preliminary approval—Generally).[2] But, Judges in this Circuit continue to evaluate settlements under the factors established under prior case law. The touchstone remains whether the settlement is "fair, reasonable, and adequate[.]" *Roger*, 2020 U.S. Dist. LEXIS 108259, at *10; Fed. R. Civ. P. 23(e)(2).

Courts in this jurisdiction consider "a variety of factors, including: (a) whether the settlement is the result of arm's-length negotiations; (b) the terms of the settlement in relation to the strengths of plaintiffs' case; (c) the status of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Roger*, 2020 U.S. Dist. LEXIS 108259, at *10; *see also Hardy*, 49 F. Supp. 3d at, 49-50 (pre-Amendment case evaluating

---

[1] These changes were proposed by the Parties in the Joint Motion for Modification of Notice and the Preliminary Approval Order [ECF No. 70], p.3, and approved by this Court in the Amended Preliminary Approval Order [ECF No. 71], ¶ 11.

[2] Rule 23(e) now provides that the Court may approve a class action settlement only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:
(A)   the class representatives and class counsel have adequately represented the class;
(B)   the proposal was negotiated at arm's length;
(C)   the relief provided for the class is adequate, taking into account:
(i)    the costs, risks, and delay of trial and appeal;
(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   the proposal treats class members equitably relative to each other.
Fed. R. Civ. P. 23(e)(2).

same five factors in finally approving class action settlement: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel").

### A. The settlement is the Result of Arm's-Length Negotiations.

This settlement is the result of arm's length negotiations conducted by counsel with experience in civil rights class actions. Motion for Preliminary Approval, p, 13. Defense counsel likewise has litigated numerous complex civil rights class actions on behalf of the District. The Parties vigorously litigated the case for several years and entered into negotiations only after the Court issued its Order denying in part the District's motion to dismiss, a long period of discovery, consultation by Plaintiffs' counsel with an expert who reviewed the probable cause determinations for each arrest from District's data export from the MPD booking database, and after several months of mediation in the Court's mediation program with the assistance of an experienced mediator.

### B. The Amount of the Settlement in Relation to the Strength of Plaintiffs' Claims.

Plaintiffs addressed this issue in the submissions in support of their Motion for Preliminary Approval. Motion for Preliminary Approval, p. 7.

The terms of the settlement are favorable to the plaintiffs in relation to the strength of their case. The recovery here is in line with those in other similar cases both in the District and in other major metropolitan areas such as Los Angeles. The terms of the settlement provide damages for all qualifying class members. Moreover, The Settlement Agreement also provides that the District agrees not to oppose a motion, brought individually or by Class Counsel on a

Class-wide basis, to expunge and treat as a legal nullity the arrests of Class Members covered by this Settlement Agreement, III(1).   .

## C. The Status of the Litigation at the Time of the Settlement.

This case was litigated extensively. The case spanned four years years from filing (September 18, 2017) to the date of the settlement. The District filed a motion to dismiss which Plaintiff contested vigorously. *Alexander v. Gov't of the D.C.*, Civil Action No. 17-1885 (ABJ), 2020 U.S. Dist. LEXIS 115856 (D.D.C. July 1, 2020). Plaintiffs conducted extensive discovery, including documents and database discovery; Plaintiffs retained an expert to review the probable cause statement for each class member in the MPD booking database. The Named Plaintiff and the class members in this case also had the benefit of the extensive litigation of a facial challenge to the statute by the same counsel in *Agnew v. Gov't of the D.C.*, 920 F.3d 49 (2019), and the hearings into the incommoding statute conducted by the D.C. Council, and the report of the PCB Policy Report #17-3: Blocking Passage.

## D. The Complexity and Potential Costs of Trial.

This case would have presented complex issues regarding certification, especially regarding a method of trying general damages on a class-wide basis.

Thus, a complex issue arose regarding the handling of class member damages if the Class Representative and absent class members were required to appear at individual hearings for damages.

This case would have presented complex issues regarding *Monell* liability.

## E. Reaction of the Class: The Number and Content of Claims, Objections and Opt-Outs.

On March 27, 2023 the Claims Administrator mailed Notice Packets to the 146 Class Member's for whom the Claims Administrator had a mailing address. There were six (6) Class

Members without mailing address information that were not included in this mailing. There are also a handful of juveniles who are class members.

The Claims Administrator and the Parties are currently investigating how to locate addresses for six (6) Class Members without mailing address information so Notice Packets can be sent to them. The Parties are also preparing a method to send Notice Packets to class members who are juveniles.

The Parties will provide the Class's reaction to the settlement in the case after the Deadline for Class Members to submit any objections to the proposed Settlement, which is June 14, 2023.

**F. The Opinion of Experienced Counsel.**

As detailed in the Motion for Preliminary Approval, Class Counsel believe that this settlement is the best result achievable in the circumstances of the case. Class Counsel have based their approval of settlement on the risks of certification, trial, especially trial of damages. and appeal. Moreover, even if Plaintiffs were to win at trial and on appeal, the protracted litigation would result in considerable delay to Plaintiffs' recovery. A lower, guaranteed sum today over the possibility of getting a larger amount (with risk of getting nothing) in the future is a rational balance, especially in today's troubled economic environment. This settlement is based upon a reasonably-anticipated claims rate of 10% which is very high in this type of case and very unlikely to be exceeded. Further, the notice contains sufficient notice provisions and the Settlement Agreement provides a simple claims process. The risk that the Court might not certify the class as to damages which would necessitate Settlement Class Members to come forward and prove damages in mini-trials is a significant factor in Class Counsel's opinion.

**IV. The Class Administration Costs Should Be Paid.**

The settlement agreement provided that $25,000 be paid to the claims administrator and that payment has already been made by the District. JND now estimates the total cost will be $32,215.00 and agrees that any additional amount will be paid in accordance with the Settlement Agreement. The Class Administrator, JND Legal Administration, will submit a declaration after the administration process is over, detailing their administration.

## V. Attorneys' fees and Incentive award for Mr. Joseph.

Class Counsel are seeking fees in the amount of $130,000 inclusive of amounts paid to the expert who analyzed the arrests for probable cause. This amounts to about 29% of the class fund or less since the fee award of $130,000 also includes litigation expenses.

The percentage of the fund fee is reasonable considering the highly risky nature of the case, the number of hours expended, the exceptional result, the quality of representation and other factors.

This percentage is well within the range of fees awarded by District Courts in the D.C. Circuit, where District Courts have found awards of up to 45% of the fund to be reasonable. *See generally, Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7-9 (D.D.C. 2008) (awarding attorneys' fee of 45% of the settlement fund); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-MS-276 (TFH), 2003 WL 22037741, *7 (D.D.C. June 16, 2003) (finding that percentage of the fund fee awards range from 15-45%); and *In re Ampicillin Antitrust Litigation*, 526 F.Supp. 494 (D.D.C. 1981) (finding that courts have awarded percentage of the fund attorneys' fees greater than 45% and awarding plaintiffs attorneys' fees equal to 45%).

The settlement also provides for an incentive award for the Class Representative, Mr. Alexander, in the amount of $5,000 in addition to the compensation received from the Class Fund. Such awards are common in class action litigation and the amount is in line with amounts paid in other cases in this District. *See e.g., Razmyar v. Bombay Club, Inc.*, 2016 U.S. Dist. LEXIS

106465, at *7-8 (D.D.C. June 13, 2016); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("Such incentive awards are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

Mr. Alexander has diligently fulfilled his duties and responsibilities as a Class Representative during every phase of the litigation.

Conclusion.

For the foregoing reasons, Plaintiffs ask that the Court enter the proposed Final Approval Order with any revisions consistent with the material provisions of the Settlement Agreement that the Court deems necessary or appropriate.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
717 D Street, N.W.
Suite # 300
Washington, DC 20004
Phone 202/824-0700
Email clairbornelaw@gmail.com

Counsel for Plaintiff